**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF OKLAHOMA**

ELGIN FAMILY COMPANY, L.L.C.,

    Plaintiff,

v.                                                                                 No. 9-CV-1228 WJ

PARALOGIA ULTRA LOUNGE, L.L.C.,

    Defendant.

**PRELIMINARY INJUNCTION AND ORDER DENYING
REQUEST FOR SECURITY BOND**

On February 24, 2010, this Court granted Plaintiff's Motion for a Preliminary Injunction against Defendant Paralogia Ultra Lounge, L.L.C. (Doc. 36). However, the Court stayed the effective date of the injunction for sixty (60) days to allow the parties to submit additional briefing on the scope of the injunction as well as whether the Court should require Plaintiff to post a bond. After reviewing the parties' briefs, the Court has decided to adopt Plaintiff's proposed injunction language with a few modifications. Furthermore, the Court has determined that a bond is unnecessary.

**I. Scope of Preliminary Injunction**

In its opinion granting Plaintiff's Motion for a Preliminary Injunction, this Court found that Plaintiff was likely to succeed on its nuisance claim because the noise emanating from Paralogia is unreasonably loud and disturbs the condominium owners above Paralogia's leased space. Therefore, the Court hereby enters the following injunction:

> The Court enjoins Paralogia, its agents, employees, and all others acting on its behalf from operating its business in such a manner as to constitute an annoyance, disturbance and/or nuisance, thereby preventing the enjoyment by the upstairs residents of their property. Specifically, the Court enjoins Paralogia from amplifying music or voices so that they are plainly audible in one or more condominiums of the Centennial Building. Complaints to the City of Oklahoma City made by two or more persons in any twelve (12) hour period shall constitute *prima facie* evidence that the noise has exceeded this standard, unless Paralogia can establish objectively by appropriate sound-measuring equipment that the noise did not exceed 86 decibels inside Paralogia's leased space.

This injunction is consistent with those entered by other courts. *See, e.g.*, *Mantaee County v. J. Richard Kaiser Enterprises, Inc.*, 874 So.2d 38, 40 (Fla. Ct. App. 2004). It also mirrors the language in Paralogia's lease and in the Oklahoma City municipal noise ordinances. Furthermore, this injunction is more specific than the injunction struck down by the Second Circuit as overly vague. *See Howard Opera House Assoc. v. Urban Outfitters, Inc.*, 322 F.3d 125, 129-30 (2d Cir. 2003) (prohibiting noise which unreasonably interferes with or disturbs other tenants). The Plaintiff's original proposed injunction stated that complaints by two or more persons to the City of Oklahoma City within any twenty-four hour period shall constitute prima facie evidence of a violation. Because the unreasonable noise from Paralogia only occurs in the evenings between 8:00 p.m. and 2:00 a.m., the Court believes that a twelve hour period is more appropriate. If two or more Centennial tenants file noise complaints with the City of Oklahoma City on the same evening, the Court will consider that prima facie evidence that Paralogia has violated the injunction. However, if Paralogia can show that the noise inside its

premises did not exceed 86 decibels, then this Court will presume that the noise was reasonable. Keith Muse, one of Paralogia's owners, testified that the condominium owners agreed that the noise from Paralogia was not unreasonably loud so long as it was kept below 86 to 88 decibels. *See* Exhibit 5, Plaintiff's Brief on the Scope of Preliminary Injunction and Amount of Security Bond. Both parties submit the 86 to 88 decibel range as an appropriate benchmark for the injunction. Therefore, this Court will presume that noise from Paralogia below 86 decibels is not plainly audible in the condominiums.

## II. Amount of Security Bond

Rule 65(c) of the *Federal Rules of Civil Procedure* states that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." While the Court is not required to issue a bond, it must "giv[e] consideration to whether the circumstances of a particular case justify the unusual practice of leaving the enjoined party bereft of security." *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461 (10th Cir. 1987). Here, because such unusual circumstances exist, the Court finds that no bond is necessary.

First, Paralogia has given notice to Centennial on the Canal that it will be vacating the leased premises by Friday, April 30, 2010. *See* Exhibit 1, Plaintiff's Reply in Support of its Brief on the Scope of the Preliminary Injunction and Amount of Security Bond. Because this Court stayed the operative effect of the injunction for sixty days, the injunction will not go into effect until Monday, April 26, 2010. Accordingly, this injunction will only affect Paralogia's business operations for five days. Any lost revenue suffered by Paralogia over those five days will surely be minimal.

Second, Paralogia has not given this Court any rational basis from which to determine the amount of Paralogia's lost revenue. *See AB Electrolux v. Bermil Indus. Corp.*, 481 F.Supp.2d 325, 336 (S.D.N.Y. 2007) (noting that the party seeking security must establish a rational basis for the amount of the proposed bond). A court need not set a bond based on speculative economic damages. *Id.* While this Court would have considered setting a bond based on Paralogia's lost revenue for a week, Paralogia has not given the Court any evidence (other than anecdotal evidence[1]) regarding its estimated weekly lost revenue as a result of keeping the noise under 86 decibels.

Finally, in addition to lost revenue, Paralogia asks this Court to impose a bond to cover its investment and lease improvements in the premises. It submits an affidavit by Keith Muse in which he states that Paralogia has invested $431,667 in the ultra lounge. According to Paralogia, the preliminary injunction has forced it to vacate the premises because the ultra lounge cannot be profitable when required to operate at low sound levels. The Court declines to issue a bond in this amount because Paralogia has not shown that its decision to vacate the premises is a *result* of the preliminary injunction. First, Paralogia served its notice of intent to vacate the space almost two weeks before this injunction even takes effect. Second, as Plaintiff points out, Paralogia has never been profitable. Without evidence to the contrary, the Court has no way of knowing whether Paralogia would have vacated the space even without a preliminary injunction on the horizon.

---

[1] Keith Muse, in an affidavit, asserts that "[w]eekly sales for the eight (8) weeks preceding the preliminary injunction hearing averaged the approximate sum of $4,148.00 while that for the six (6) weeks following the hearing averaged only $1,464.00." However, the evidence also shows that Paralogia kept the music volume to 65 to 80 decibels in the six weeks following the hearing. This injunction, on the other hand, would permit Paralogia to operate at 86 decibels. Paralogia has given the Court no reason to suspect that it would lose *any* business if allowed to operate at 86 decibels.

4

**CONCLUSION**

Pursuant to this Court's Memorandum Order and Opinion Granting Plaintiff's Motion for a Preliminary Inunction, this preliminary injunction shall take effect on Monday, April 26, 2010. That injunction shall take the form specified above. Furthermore, Plaintiff will not be required to post a security bond.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE